IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMIE L. BROWN, | * | |
| Petitioner, | * | |
| v. | * | Civ. No. DLB-22-410 |
| FRANK KENDALL, *et al.*, | * | |
| Respondents. | * | |

**MEMORANDUM OPINION**

Jamie L. Brown filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the validity of his court-martial by the United States Air Force (the "Air Force"). ECF 1 & 4. The respondents, Frank Kendall, Secretary of the Air Force, and Thomas Shubert, President of the Air Force Clemency & Parole Board, move to dismiss the petition. ECF 16. The motion is fully briefed. ECF 18 & 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the following reasons, the petition is dismissed for failure to state a claim.

**I.      Background**

On March 22, 2019, Brown, a former enlisted member of the Air Force, was convicted by general court-martial of one specification of attempted sexual assault and one specification of sexual assault, in violation of Articles 80 and 120 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. §§ 880, 920. ECF 1, at 23. The charges involved a sexual encounter with a female Air Force member, identified as "NM," who alleged that she was too intoxicated to consent. *Id.* at 13–22. Brown was sentenced to a dishonorable discharge, confinement for 34 months, and reduction to the grade of E-4. *Id.* at 23.

Brown timely appealed the decision to the U.S. Air Force Court of Criminal Appeals ("AFCCA"), which affirmed the conviction on August 16, 2021. *Id.*; ECF 16-4, 50–85, AR

000289–324.[1]  He then appealed to the Court of Appeals for the Armed Forces ("CAAF"), which declined to hear the case on January 5, 2022.  ECF 1, at 23; ECF 16-2, AR 000067.  On January 18, 2022, he filed this petition pursuant to 28 U.S.C. § 2241.  At the time of his filing, Brown was on parole.  ECF 1, at 12.  The respondents filed a motion to dismiss the petition on July 29, 2022.  ECF 16.

## II.     Standard of Review

The Federal Rules of Civil Procedure apply in habeas corpus proceedings "to the extent that the practice in those proceedings[] is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases[] and has previously conformed to the practice in civil actions."  Fed. R. Civ. P. 81(a)(4).  A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency" of a pleading and "should be granted unless the [pleading] 'states a plausible claim for relief.'"  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir.), *as amended* (Jan. 20, 2017) (quoting *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012)).  The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to them, and the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  The Court also may consider judicially noticed facts, public records such as court cases, and documents integral to and explicitly relied on in the pleading.  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).  Thus, the Court may consider "the record created by the military courts as well as the factual findings of the court-martial" attached to the respondents' motion to dismiss.  *See U.S. ex rel. New v. Rumsfeld*, 350 F. Supp. 2d 80, 89 (D.D.C. 2004); *Woods v. Mayorkas*, No.

---

[1] Where appropriate, the Court cites to the page numbers generated by its electronic filing system (CM/ECF) and the page numbers provided in the Administrative Record ("AR").

SAG-21-519, 2021 WL 3681165, at *3 (D. Md. Aug. 19, 2021) (considering "filings from the related pending court-martial proceedings" on a motion to dismiss a § 2241 petition).

Section 2241 authorizes the federal district courts to grant writs of habeas corpus to persons who are "in custody in violation of the Constitution or laws or treaties of the United States[,]" among other circumstances. 28 U.S.C. § 2241(c)(3). The statute's reach extends to "applications for habeas corpus from persons confined by the military courts." *Ward v. United States*, 982 F.3d 906, 912 (4th Cir. 2020) (quoting *Burns v. Wilson*, 346 U.S. 137, 139 (1953)). But "in military habeas corpus[,] the inquiry, the scope of matters open for review, has always been more narrow than in civil cases." *Burns*, 346 U.S. at 139. Generally, federal civil review of court-martial proceedings is limited to whether (1) military jurisdiction was proper and (2) the military gave full and fair consideration to a petitioner's constitutional claims. *Fricke v. Sec'y of Navy*, 509 F.3d 1287, 1289–90 (10th Cir. 2007) (citing *Burns*, 346 U.S. at 142).

The judgment of a military court is "always open to collateral attack" on the question of jurisdiction, and that is the traditional basis for federal habeas review of court-martial proceedings. *Givens v. Zerbst*, 255 U.S. 11, 19 (1921); *see Fricke*, 509 F.3d at 1289. This is so because "a military court is a statutory creation, vested with special and limited jurisdiction[.]" *Willenbring v. United States*, 559 F.3d 225, 231 (4th Cir. 2009) (citing *Runkle v. United States*, 122 U.S. 543, 555 (1887)). "As a result, a court-martial proceeding must be convened and constituted in conformity with the applicable statutes, specifically the UCMJ; otherwise the military court lacks jurisdiction." *Id.* (citing *McClaughry v. Deming*, 186 U.S. 49, 62 (1902)).

In addition to jurisdictional challenges, federal courts may review constitutional claims in military habeas cases if the military courts have not "dealt fully and fairly" with such claims. *Burns*, 346 U.S. at 142. The Fourth Circuit "has yet to enunciate the exact standard governing

3

collateral attacks" in such cases, but many of the circuit's district courts, including this Court, have adopted the Tenth Circuit's test for determining when non-jurisdictional habeas review of military convictions is appropriate.[2] *Chinchilla v. Whitley*, No. 3:20cv871-HEH, 2021 WL 1792075, at *3 (E.D. Va. May 5, 2021) (collecting cases), *aff'd*, No. 21-1731, 2022 WL 3136940 (4th Cir. Aug. 5, 2022) (unpublished); *Miller v. Air Force Clemency & Parole Bd.*, No. JFM-10-2621, 2011 WL 4402497, at *8 (D. Md. Sept. 20, 2011), *aff'd*, 472 F. App'x 210 (4th Cir. 2012) (unpublished). The Tenth Circuit has held that four conditions must be met to permit review of non-jurisdictional challenges:

> (1) the asserted error is of substantial constitutional dimension, (2) the issue is one of law rather than disputed fact, (3) no military considerations warrant a different treatment of constitutional claims, and (4) the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards.

*Thomas v. U.S. Disciplinary Barracks*, 625 F.3d 667, 670–71 (10th Cir. 2010) (citing *Dodson v. Zelez*, 917 F.2d 1250, 1252–53 (10th Cir. 1990)); *see also Roberts v. Callahan*, 321 F.3d 994, 995 (10th Cir. 2003) (explaining the four conditions are not a "separate hurdle" but instead "merely aid[] determination of whether the court may reach the merits of the case" under *Burns*). The Fourth Circuit's forays into this area of law are consistent with these requirements. *See Willenbring*, 559 F.3d at 232 (citing *Burns*, 346 U.S. at 142) (stating federal courts are "normally not at liberty to revisit a military court's evidentiary rulings or findings"); *Ward v. United States*, 982 F.3d 906, 912 (4th Cir. 2020) (affirming dismissal of habeas petition where the military court "fully and fairly considered" the claim).

---

[2] Courts "consistently justify adoption of the Tenth Circuit's standard on the basis that the United States Disciplinary Barracks are located at Fort Leavenworth, Kansas, which has enabled the Tenth Circuit to develop expertise and a significant body of case law in this area." *Anderson v. Bolster*, No. 1:19cv75 (LO/TCB), 2020 WL 5097516, at *4 n.4 (E.D. Va. Aug. 27, 2020), *aff'd*, No. 20-7707, 2022 WL 4998074 (4th Cir. Oct. 4, 2022) (unpublished).

Of the four requirements, the fourth is the most significant. *Thomas*, 625 F.3d at 671. The petitioner bears the burden of establishing that the military courts' consideration of the issues was "legally inadequate[.]" *Watson v. McCotter*, 782 F.2d 143, 144 (10th Cir. 1986) (quoting *Burns*, 346 U.S. at 146). If "an issue is briefed and argued" before a military court, then it generally is viewed as having received full and fair consideration, even if the military court "summarily disposed of the issue with the mere statement that it did not consider the issue meritorious or requiring discussion." *Id.*; *see also Thomas*, 625 F.3d at 671 (finding sufficient consideration despite the fact that the military court did not hear oral argument or explain its reasoning). If a petitioner's constitutional claims were "fully and fairly considered by a military court," then dismissal of the claims "is appropriate under Rule 12(b)(6) for failure to state a claim upon which relief can be granted[.]" *Ward*, 982 F.3d at 912.

## III. Discussion

### A. Jurisdiction

Brown named Frank Kendall, Secretary of the Air Force, and Thomas Shubert, President of the Air Force Clemency & Parole Board, as respondents. ECF 1. The respondents assert that neither of them is the proper respondent for a § 2241 petition. The identity of the proper respondent is a jurisdictional question, so the Court addresses that issue first. *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004); *Kanai v. McHugh*, 638 F.3d 251, 258 (4th Cir. 2011).

The federal habeas statute provides that the proper respondent is "the person who has custody over" the petitioner. 28 U.S.C. § 2242. The Court must have personal jurisdiction over this individual to have jurisdiction over a habeas petition directed to him or her. *Padilla*, 542 U.S. at 434–35; *United States v. Poole*, 531 F.3d 263, 273 (4th Cir. 2008); *see also* 28 U.S.C. § 2241(a) (authorizing the district courts to issue writs of habeas corpus "within their respective

5

jurisdictions"). In cases where a petitioner is physically detained, the immediate custodian and proper respondent is the warden of the facility of detention. *Padilla*, 542 U.S. at 447. "In a scenario involving parole or supervised release, in which there is no warden imposing physical restraint, a petitioner may substitute whatever parole board or other governing body is responsible for setting the conditions of supervised release and enforcing them if the petitioner violates those conditions." *Miller v. Sangiacomo*, No. 10-CV-169A, 2010 WL 3749065, at *3 (W.D.N.Y. Sept. 20, 2010) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)); *Padilla*, 542 U.S. at 438 (stating "a habeas petitioner who challenges a form of 'custody' other than present physical confinement may name as respondent the entity or person who exercises legal control with respect to the challenged 'custody'").

Brown initially filed his petition in the United States District Court for the District of Columbia because the Secretary is located in the District of Columbia. ECF 1. On February 3, 2022, that court transferred Brown's case to this district. ECF 3. The court reasoned that Brown's immediate custodian, which it identified as Shubert, was the "only proper respondent" and that "jurisdiction is proper only in the district in which the immediate, not the ultimate, custodian is located." *Id.* Thus, while the court may have had personal jurisdiction over the Secretary, it concluded that fact did not matter because it lacked personal jurisdiction over Shubert. *Id.* It transferred the case to this district, where the Air Force Clemency and Parole Board is located.

The respondents argue that the Secretary is far removed from having immediate custody of Brown and "is particularly inappropriate to name as a respondent." ECF 16-1, at 18. As for Shubert, the respondents do not argue that he was not the proper respondent at the time Brown filed his petition. Instead, they note that Brown has completed his sentence, *see* ECF 18, at 9, and they contend that, as a result, Shubert no longer is the proper respondent because his custody of

6

Brown has ended. The respondents identify Brown's current immediate commander as the proper respondent.

When Brown filed his petition on January 18, he was on parole and under the immediate custody of the Air Force Clemency and Parole Board. Although Brown's parole ended three days later on January 21, jurisdiction is determined at the time of filing. *Plymail v. Mirandy*, 8 F.4th 308, 314 (4th Cir. 2021). And "once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on [the habeas] application." *Id.* (quoting *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)). Because the Air Force Clemency and Parole Board was Brown's immediate custodian when the petition was filed, Shubert is the proper respondent. *See Miller*, 2010 WL 3749065, at *3 (holding Air Force Clemency and Parole Board was the proper respondent because it was "the governing body currently managing petitioner's liberty").[3]

The Court has personal jurisdiction over Shubert. Because he is the proper respondent, the Court has jurisdiction over Brown's petition.

### B. Full and Fair Consideration

Brown claims that the military judge overseeing the court-martial panel in his case violated his due process rights by (1) permitting the panel to return findings by less than a unanimous verdict; (2) instructing the panel as to uncharged theories of criminal liability; and (3) excluding potentially exculpatory evidence and refusing to permit Brown to cross examine a witness based

---

[3] Brown's completion of his sentence does not render his petition moot. The Court must presume that Brown faces continuing collateral consequences as a result of his conviction, and the existence of such collateral consequences "prevents a habeas petition from becoming moot." *Plymail*, 8 F. 4th at 315 (citing *Carafas*, 391 U.S. at 237–38; *Sibron v. New York*, 392 U.S. 40, 55 (1968)).

on that evidence. The respondents argue that Brown's claims were fully and fairly considered by the military courts. The Court considers each claim in turn.

### 1. Less-Than-Unanimous Verdict Claim

Brown argues first that his due process rights were violated because the military judge instructed panel members that they could return a non-unanimous verdict.[4] ECF 1, at 24. He points to a Supreme Court decision that came down while his appeal was pending, *Ramos v. Louisiana*, which held that that the Sixth Amendment right to a jury trial, as incorporated against the States, requires a unanimous verdict to convict a defendant of a serious offense. 140 S. Ct. 1390, 1397 (2020). Brown argues the same standard should apply to military courts.

Brown's constitutional challenge to a non-unanimous jury based on *Ramos* was fully and fairly considered by the military courts. Brown raised his challenge with both the AFCCA and the CAAF. ECF 16-4, at 289–90, AR 000528–29 (AFCCA briefing); ECF 16-2, at 72–74, 135–45, AR 00072–74, 000135–45 (CAAF briefing). The government responded to the challenge in its brief before the AFCCA. ECF 16-4, at 157–58, AR 000396–97. It relied on its AFCCA briefing before the CAAF. ECF 16-2, at 96, AR 000096. The AFCCA stated that it "carefully considered" the issue before finding that it "warrant[ed] neither further discussion nor relief." ECF 16-4, at 52, AR000291. The CAAF similarly denied the claim via summary disposition. Full and fair consideration includes such summary dispositions where "there is thoroughness and adequacy of the briefing" before the military courts. *Thomas*, 625 F.3d at 672 (finding "full and fair consideration" standard satisfied where the intermediate military appellate court held no oral

---

[4] Polling of panel members is prohibited in court martial proceedings, so the Court does not know if Brown was convicted by a less-than-unanimous panel. *See Rules for Military Commissions* (R.M.C.) 923(e); ECF 16-1, at 12.

8

argument and did "not spell out" the rationale for dismissal); *see also Miller*, 2011 WL 4402497, at *10–12 (finding full and fair consideration where the issue was fully briefed, the AFCCA summarily rejected the claim, and the CAAF denied review). Brown's claim was thoroughly and adequately briefed, and as a result, the Court cannot reconsider it on the merits. *Watson*, 782 F.2d at 144 (citing *Burns*, 346 U.S. at 146).

Moreover, the asserted error is not of a "substantial constitutional dimension." *Thomas*, 625 F.3d at 670. Several federal courts reviewing § 2241 petitions have rejected arguments like Brown's. *See Medrano v. Smith*, 797 F.2d 1538, 1544 (10th Cir. 1986) (holding persons subject to the jurisdiction of courts-martial "are not entitled to a jury trial and therefore to its unanimity requirement" under the Sixth Amendment or under Fifth Amendment due process); *Dodson*, 917 F.2d at 1253, 1256 (10th Cir. 1990) (collecting cases and affirming that the right to a jury trial does not apply in military courts and that a two-thirds vote for conviction by a court-martial panel satisfies due process). *Ramos*, of course, postdates these cases, but its holding does not undermine these decisions.[5] Indeed, the *Ramos* decision centers on the unanimity requirement as to state criminal trials; it does not discuss application of the unanimity requirement to the military justice system. As federal courts have held, "[t]o the extent that a right to jury trial exists in [court-martial proceedings], it is a creation of the Uniform Code of Military Justice, not the United States Constitution." *New*, 350 F. Supp. 2d at 92–93 & n.8. Thus, the Court does not find adequate basis for habeas review.

---

[5] Lower military courts have largely continued to uphold non-unanimous juries following the *Ramos* decision. *See, e.g.*, *United States v. Westcott*, No. ACM 39936, 2022 WL 807944 (A.F. Ct. Crim. App. Mar. 17, 2022), *review denied*, 82 M.J. 438 (C.A.A.F. 2022). In July 2022, the CAAF agreed to hear the issue. *See United States v. Anderson*, No. ACM 39969, 2022 WL 884314 (A.F. Ct. Crim. App. Mar. 25, 2022), *review granted*, 82 M.J. 440 (C.A.A.F. 2022). The case remains pending.

Brown attempts to sidestep these problems by arguing that his *Ramos* claim is a jurisdictional claim and not subject to the *Burns* full-and-fair-consideration analysis. He cites *Larrabee v. Braithwaite*, 502 F. Supp. 3d 322, 327 (D.D.C. 2020), *rev'd sub nom. Larrabee v. Del Toro*, 45 F.4th 81 (D.C. Cir. 2022), for the proposition that a court-martial is void if the statute creating it is unconstitutional and void "because courts-martial have no inherent jurisdiction or independent existence." ECF 18, at 2–3. He contends that the court-martial in his case is void because "the portion of the UCMJ authorizing non-unanimous panel verdicts is unconstitutional and void" under *Ramos*. *Id.* In short, he reads *Larrabee* as rendering any constitutional challenge to the statutory procedures of the military courts a jurisdictional claim. But *Larrabee* did not say that. The petitioner in *Larrabee*, a military retiree, claimed the military court lacked jurisdiction over him because the provision of the UCMJ that provides for court-martial jurisdiction over former service members was unconstitutional. *Larrabee*, 502 F. Supp. 3d at 324. The petitioner's claim was jurisdictional because he challenged the statute that gave the military court jurisdiction over him. *See Larrabee*, 45 F. 4th at 87 (noting the jurisdictional question turned on "the military status of the accused" and discussing cases that addressed "a UCMJ provision allowing court-martial jurisdiction over a class of persons"). Brown's *Ramos* claim, conversely, attacks the statutory provision permitting non-unanimous panel decisions. He does not attack a jurisdictional statute. Nor does he question that the court-martial proceedings here were "convened and constituted in conformity with the applicable statutes[.]" *See Willenbring*, 559 F.3d at 231. Thus, Brown's *Ramos* claim is not jurisdictional and is subject to the *Burns* analysis.

    2. **Uncharged Misconduct Claim**

Brown next argues that the military judge overseeing the court-martial erred by instructing the court-martial panel on two theories of liability that were not advanced by the prosecution.

Specifically, Brown asserts that the military judge erroneously advised the panel that (1) "[l]ack of consent may be inferred based on the circumstances," and "[a]ll the surrounding circumstances are to be considered in determining whether a person gave consent"; and (2) "[a] sleeping, unconscious, or incompetent person cannot consent," and an "incompetent person" includes a person who "lacks either the mental or physical ability to consent because he or she is [] asleep or unconscious." ECF 1, at 30–34; *see* ECF 16-6, at 518–38, AR 001517–37 (instructions). The instructions were erroneous, Brown argues, because the prosecution did not charge that NM withheld consent or was unable to consent due to being asleep. The prosecution charged only that NM was unable to consent "due to impairment by alcohol[.]" ECF 16-5, at 11, AR 000608 (charging document).[6]

Both claims were fully briefed and considered and rejected by the military courts. Brown argued the issue at trial, ECF 16-6, at 500–09, AR 001501–08; he briefed it before the AFCCA, ECF 16-4, at 31–40, AR 000270–79; and he briefed it before the CAAF, ECF 16-2, at 119–24, AR 000119–24. The government responded in its brief to the AFCCA. ECF 16-4, at 140–50, AR 000379–89. Regarding the first jury instruction, the AFCCA stated:

> Although [Brown] does not claim the military judge's instruction on absence of consent was an incorrect statement of the law, he argues that the instruction on the *uncharged* bodily harm theory of liability was an error of constitutional dimensions. We disagree. The military judge correctly instructed the court members on the elements of the charged sexual assaults on NM, including the requirement that the members find beyond a reasonable doubt that NM was incapable of consenting due to impairment by alcohol, and that Appellant knew or reasonably should have known NM was so impaired. Court members are presumed to follow the military judge's instructions absent evidence to the contrary. . . . We see no such evidence here, and we find no basis to conclude [Brown] was convicted on an uncharged bodily harm theory.

---

[6] The court's instructions were comprehensive, and the court stated several times that the issue was whether NM was "incapable of consenting to the sexual act due to impairment by alcohol." *See, e.g.*, ECF 16-6, at 520, AR 001519.

11

ECF 16-4, at 67, AR 000306. As to the second instruction, the AFCCA likewise stated:

> [A]ssuming for purposes of our analysis that the instruction given failed to correctly portray the relationship between incompetence and sleep, we find any such error did not materially prejudice [Brown's] substantial rights. . . . Again, the military judge clearly and correctly instructed the court members that in order to find [Brown] guilty of the charged sexual assaults against NM, they must find beyond a reasonable doubt that NM was incapable of consenting due to impairment by alcohol, and that [Brown] knew or reasonably should have known NM was so impaired. Moreover, the military judge provided an accurate definition of "incapable of consenting" . . . which [Brown] does not challenge on appeal. Accordingly, we presume the court members followed the military judge's instructions and applied the correct standard in their deliberations.

ECF 16-4, at 67–68, AR 000306–07. Brown has not established that "the military courts failed to give adequate consideration to the issues involved or failed to apply proper legal standards." *See Thomas*, 625 F.3d at 671.

Brown cites two cases in support of his argument that the military courts did not give full and fair consideration to his claims: *Jefferson v. Berrong*, 783 F. Supp. 1304 (D. Kan. 1992), and *Khan v. Hart*, 943 F.2d 1261 (10th Cir. 1991). In *Jefferson*, the court elected to review an ineffective assistance of appellate counsel claim that had been raised for the first time before the Court of Military Appeals ("CMA") and which that court summarily had denied by declining to grant review. *Jefferson*, 783 F. Supp. at 1308. The court's decision was motivated in part by the fact that the claim necessarily was raised for the first time before the CMA, as it challenged the effectiveness of appellate counsel. *See id.* The same is not true for Brown's claims. In *Khan*, the government did not "argue that that review [was] inappropriate, but rather [] defended on the merits[.]" 943 F.2d at 1263. While the Tenth Circuit in that case also stated that the CMA's summary denial of relief did "not indicate the consideration given to petitioner's claims or admit of review," it did not explain what led it to that conclusion, which seems in conflict with the Tenth Circuit's other holdings that summary denials were sufficient to establish full and fair

12

consideration. *See id.* At bottom, the Court is not persuaded that either case undermines the Tenth Circuit's recent and repeated affirmations that full and fair consideration is given when a claim is adequately and thoroughly briefed, even if the military courts summarily disposed of the claim.

### 3. Exculpatory Evidence Claim

Finally, Brown asserts that the military judge erred by excluding purported exculpatory evidence and not allowing cross-examination of NM on that evidence. ECF 1, 28–34; ECF 4. This claim, too, was thoroughly briefed before the military courts. And once again, it was considered and rejected by the AFCCA, which held:

> Appellant fails to substantially address the primary basis for the military judge's ruling, which was not Mil. R. Evid. 403; it was that the Defense failed to meet its burden to provide evidence of the sexual activity it sought to introduce under Mil. R. Evid. 412. The military judge acknowledged the presence of male DNA permitted an inference that NM had recent physical contact with a male, but it did not demonstrate "sexual activity." The totality of the evidence suggests the unidentified DNA likely belonged to NM's husband SrA TM, with whom NM was living and sharing a bed between 20 June 2017 and 23 June 2017, although SrA TM's DNA was evidently not compared to the DNA from the swabs. We do not find the military judge's application of Mil. R. Evid. 412 to be arbitrary, fanciful, or clearly unreasonable. Without evidence of sexual activity—other than the sexual assault by Appellant—between 20 June 2017 and 23 June 2017, the proffered evidence did not contradict NM's statement recorded in the SAFE report and therefore it had essentially no relevance with respect to NM's credibility on the asserted basis.

ECF 16-4, 82, AR 000321. For reasons similar to those previously stated, the Court again finds that the claim was fully and fairly considered by the military courts and does not provide a basis for federal habeas review. *See Brimeyer v. Nelson*, 712 F. App'x 732, 737 (10th Cir. 2017) (unpublished) (declining to review claim based on improper exclusion of evidence because the military courts had given it full and fair consideration).

13

## IV.     Conclusion

Brown has not stated a claim that the Court may review.  The respondents' motion to dismiss is granted.  A separate order follows.

Date:  March 27, 2023

                                                        Deborah L. Boardman
                                                        United States District Judge